UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re: Chapter 13

Chaim E. Weiss, Case No. 26-22163 (DSJ)

Debtor.

---------------------------------------------------------X

**DECISION AND ORDER DENYING MOTION TO REOPEN CHAPTER 13 CASE TO OBTAIN RETROACTIVE STAY RELIEF AND FOR AN ORDER STRIKING BANKRUPTCY PETITION**

**APPEARANCES:**

***FITZGERALD & ASSOCIATES, PC***
*Counsel for 145 Fulton Avenue, LLC*
649 Newark Avenue
Jersey City, NJ 07306
By: Nicholas Fitzgerald, Esq.

***SOLOMON ROSENGARTEN***
*Counsel for Debtor*
1704 Avenue M
Brooklyn, New York 11230
By: Solomon Rosengarten, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion by 145 Fulton Avenue, LLC ("Movant," "145 Fulton," or the "Purchaser") to reopen this Chapter 13 case so that it can pursue an order granting retroactive stay relief and/or striking the bankruptcy petition. The Movant bid on a foreclosure sale of debtor's property in Jersey City, NJ, that occurred virtually simultaneously with Debtor's filing

of a bankruptcy petition in this Court – unfortunately for Movant the parties agree the petition was filed two minutes before Movant was awarded the property in the foreclosure sale, at a time when no sale participant was aware of the bankruptcy filing. The foreclosure sale was not immediately completed, however, and it was not until some weeks later that Movant paid the foreclosure auction purchase price and received title and keys to the property. By this time Movant was aware of the bankruptcy petition. Movant reports and no one has challenged that Movant thereafter spent approximately $10,000 repairing the property. Nevertheless, eventually, the lender on the property moved in New Jersey state court to vacate the foreclosure sale as invalid in light of the automatic stay that arose upon the filing of Debtor's bankruptcy case. The state court agreed and vacated the sale order, with Movant pursuing a motion to reconsider in state court while simultaneously seeking retroactive stay relief or an order striking the petition in this Court in hopes that relief would eliminate the basis for Movant's loss in state court.

Debtor's bankruptcy filing was deficient in numerous respects, many of which were never cured, and the bankruptcy case was fairly promptly dismissed. The lender who had brought the foreclosure action now opposes 145 Fulton's motion, presumably believing it can achieve a better recovery if the original foreclosure sale result is set aside. Debtor filed no papers on the motion, but appeared at the hearing through newly retained counsel to also oppose 145 Fulton's motion.

For reasons detailed below, 145 Fulton's motion is denied. The Court sympathizes to an extent with 145 Fulton, which appears to be run by an individual for whom the outlay of capital and repair efforts represented a significant commitment. Nevertheless, the filing of the case was not a nullity, and, by the time the Movant proceeded to consummate the sale by submitting payment and taking possession, the Movant undisputedly had notice of the bankruptcy case, and

chose to proceed without regard to the automatic stay that the filing brought about. Case law counsels against forgiving stay violations even when done with an absence of ill will, and even when the consequences may prove painful for the party that violates the stay.

## BACKGROUND

The parties agree that this bankruptcy case was filed by Chaim E Weiss ("Debtor") on February 19, 2026 at 2:10 PM, acting pro se, although the filing was not docketed until 2:17 PM that day. [ECF No. 1]. According to the petition, Debtor owned the real property located at 145 Fulton Avenue, Jersey City, NJ 07305 (the "Property"). *Id.* The Property was the subject of a sheriff sale held on the Petition Date, during which Peter Nakhla, owner of 145 Fulton Avenue LLC, ("Mr. Nakhla") was selected as the successful bidder at 2:15 PM.

At the time of the sale, Mr. Nakhla was not aware of the bankruptcy filing. Later that day, ARC Home LLC, a mortgage holder, informed Mr. Nakhla about the bankruptcy filing and advised him that "the bankruptcy filing had occurred prior to the sale, and that the sale was not valid and would need to be rescinded." ECF No. 17-6; Ex. E.

A few weeks after hearing this report from ARC Home LLC, Mr. Nakhla proceeded with the next steps to consummate the foreclosure sale. Specifically, he paid the purchase price of $490,000 plus $972.33 in interest to the sheriff's office and the deed was turned over to him. [ECF No. 17-1]. Mr. Nakhla reports that he spent $10,000 of his own money on needed repairs to the property.

Subsequently, ARC Home LLC moved to vacate the sale in state court based on the bankruptcy filing. On June 30, 2026, the Superior Court of New Jersey entered an order vacating the sale. [ECF No. 17-7]. A motion for reconsideration of the order to vacate the sale has been paused pending the resolution of this Motion.

As noted, on April 30, 2026, this Court dismissed Debtor's bankruptcy case for Debtor's failure to satisfy several statutory requirements. The case is now closed. [ECF No. 12]. Mr. Nakhla now asks the Court to reopen the case for the purpose of granting retroactive stay relief and/or striking the bankruptcy filing based on debtor's failure to complete the statutorily required credit counseling prior to the filing (or ever). [ECF No. 17].

At the hearing held on August 12, 2026, newly retained counsel appeared for Debtor and requested additional time to file an objection. The Court orally denied this request because the Motion was properly noticed on Debtor and others, and the response deadline had passed. [ECF Nos. 17 and 18].

**DISCUSSION**

Movant proposes two alternative grounds for relief that would eliminate the automatic stay as an impediment to his entitlements under the foreclosure sale. Both require reopening the closed case.

Bankruptcy Rule 5010 provides that a bankruptcy case may be reopened "[o]n the debtor's or another party in interest's motion." Fed. R. Bankr. P. 5010. Under Section 350(b) of the Bankruptcy Code, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Cause is not defined in the Code and determining when to reopen a case for cause "'invoke[s] the exercise of a bankruptcy court's equitable powers, which is dependent on the facts and circumstances of the case.'" *In re Solutia, Inc.*, 653 B.R. 99, 113 (Bankr. S.D.N.Y. 2023) (citing *In re I. Appel Corp.*, 104 F. App'x 199, 200 (2d Cir. 2004)). Whether to reopen a case is "committed to the 'broad discretion' of the bankruptcy court." *Id.* (citing *Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997)). In exercising this broad discretion, a court "may

consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." *In re Atari, Inc.*, No. 13-10176 (JLG), 2016 WL 1618346, at *4 (Bankr. S.D.N.Y. Apr. 20, 2016) (quoting *In re Emmerling*, 223 B.R. at 864).

Bankruptcy courts consider the following six factors when examining motions to reopen:

(1) the length of time that the case was closed;

(2) whether a nonbankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case;

(3) whether prior litigation in the bankruptcy court determined that another court would be the appropriate forum;

(4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;

(5) the extent of the benefit to any party by reopening; and

(6) whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted.

*In re Easley–Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013); *see Atari*, 2016 WL 1618346, at *4–5 (applying the factors). The movant bears the burden of demonstrating circumstances sufficient to justify reopening the case. *Easley–Brooks*, 487 B.R. at 406.

Here, many of the recognized factors may well counsel in favor of reopening the case, which has now been closed for approximately four months. The Court's substantive assessment of the motion, however, concludes that the substantive relief sought should be denied. Accordingly, factor six controls. There is no reason to reopen the case where it is clear at the outset that no relief would be forthcoming if the motion to reopen were granted. The reasons for the Court's substantive conclusion are discussed below.

A. Retroactive Stay Relief

The motion before the Court is unusual in that it is not bought by a creditor, but rather by the prevailing bidder in the foreclosure auction. This requires some adaptation of the generally articulated test for requests for retroactive stay relief in this Circuit. Under that jurisprudence, "factors used to analyze a request for retroactive relief were originally set forth in *In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001) (the "*Stockwell* Factors"): (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken." *In re Sklar,* 626 B.R. 750, 763 (Bankr. S.D.N.Y. 2021). Courts often view requests for retroactive relief skeptically: "[a]s the First Circuit noted, 'bankruptcy courts ordinarily must hold those who defile the automatic stay to the predictable consequences of their actions and can grant retroactive relief only sparingly and in compelling circumstances.'" *In re Crichlow*, 666 B.R. 441, 449 (Bankr. E.D.N.Y. 2024) (quoting *In re Soares*, 107 F.3d 969, 978 (1st Cir. 1997)). Thus, although whether to retroactively lift the automatic stay is within the bankruptcy court's discretion, "the exercise of discretion is subject to the 'overarching purpose' of Congressional intent in establishing the automatic stay, and thus the application of such retroactive relief must be restrained. *Soares,* 107 F.3d at 977 (honoring congressional intent requires that "strict standard" be applied when considering retroactive relief)." *In re WorldCom, Inc.,* 325 B.R. 511, 520 (Bankr. S.D.N.Y. 2005).

The Court applies the *Stockwell* factors while adapting them to the unusual circumstance where the Movant was not a creditor of Debtor's, but rather the prevailing bidder at the foreclosure auction. Overall, the Court concludes retroactive stay relief is not warranted here.

**(1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay**: This factor weighs heavily against granting the Motion. It appears undisputed that the Purchaser was told of the filing the same day as the foreclosure auction, yet he proceeded with attempting to consummate the sale by delivering payment and accepting title and possession weeks later. His acts of supposed detrimental reliance – spending $10,000 to refurbish the property – followed. It also appears undisputed that Movant was unaware of the bankruptcy that had been filed two minutes before the auction award to him, which in other circumstances might justify the relief he seeks, but his knowingly continuing to effectuate the sale even after he was told of the bankruptcy filing and the resulting invalidity of the sale [ECF No. 17-6; Ex. E] undermines Movant's position. The Court is not in a position to assess Movant's sophistication or lack of sophistication, but it is clear he chose to proceed and take all steps that could constitute detrimental reliance only *after* he was told of the bankruptcy and the resulting invalidity of the foreclosure sale. This factor therefore weighs strongly against granting retroactive stay relief.

**(2) if the debtor has acted in bad faith**: A debtor's bad faith can justify or help to justify granting retroactive stay relief in favor of a creditor. And here, there are significant signs that Debtor did act in bad faith in filing and pursuing his bankruptcy case, with numerous filing deficiencies, mostly uncured, and with no evident good-faith progress in the case before its fairly prompt dismissal. But here, the force of this factor is somewhat mitigated by the clear notice Purchaser had of the filing and the invalidity of the sale; this is not a case where an unknowing

stay violation can be excused in part because the Debtor's case was not a good-faith exercise anyway. This factor thus favors retroactive relief but only to a limited extent.

**(3) if there was equity in the property of the estate:** This factor has most clear relevance to situations where a creditor seeks stay relief that may be unwarranted if a debtor has equity in the property, while being quite possibly warranted if there is no equity in the property. *See* Bankruptcy Code §§ 362(d)(1), 362(d)(2). This factor applies less clearly if at all to a subsequent purchaser such as Movant who is seeking to retroactively validate a purchase made with knowledge of the bankruptcy filing. At a minimum, the Movant cannot claim that a lack of equity on the property would justify his actions or afford him a basis to obtain relief even on a prospective basis. This factor is thus likely neutral and certainly does not support Movant.

**(4) if the property was necessary for an effective reorganization:** Debtor did not at any time take any steps that would have given the Court any reason to believe that a confirmable plan could be achieved or was being realistically pursued. There is no basis to conclude the property was necessary for an effective reorganization, although, presumably, whatever chance the Debtor had to confirm a plan depended on realizing value from the property. This factor, like factor three, either is neutral or only weakly favors granting stay relief.

**(5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation:** There is a significant chance that stay relief could and would have been obtained had the case not been promptly dismissed. But that remedy was available to the secured lender, not to Purchaser, and there is no basis to conclude such relief would have been granted before Movant proceeded with finalizing the purchase in violation of the automatic stay. This timing reality thus weighs against granting the relief sought.

**(6) if failure to grant retroactive relief would cause unnecessary expense to the creditor:** If retroactive stay relief is not granted, there likely will be a rescheduled sale and the Purchaser might incur additional costs if he decides to participate. Moreover, the Purchaser is at real risk of losing the benefit of expenditures Purchaser's principal has already made, including losing the use of the purchase price and the $10,000 (and quite possibly sweat equity) he has put into the property. However, as a court in this circuit has warned, "in assessing this factor, *caution is warranted when a creditor has proceeded with a sale that proves to be in violation of the automatic stay*. Expenses in the form of costs and delays associated with noticing and conducting a second sale may appear burdensome and 'unnecessary' to a creditor that seeks *nunc pro tunc* or retroactive stay relief. Whether these costs are 'unnecessary' for these purposes may well turn on the central considerations identified above, whether the creditor knowingly acted in violation of the automatic stay, and whether the debtor acted in bad faith." *Crichlow*, 666 B.R. at 459 (emphasis added). As explained above, despite having received notice of the bankruptcy filing and a caution that the sale would not be valid, the Purchaser went ahead to consummate the sale weeks later. Thus, this factor weighs against retroactive stay relief. (The Court notes in passing and without stating a studied view or rendering advice that, if Purchaser ends up not owning the property or incurs additional expenses, the impact on him may be eased if he can secure relief, perhaps on a theory of unjust enrichment or quantum meruit, at least in connection with his renovation expenditures.)

**(7) if the creditor has detrimentally changed its position on the basis of the action taken:** The Purchaser was not a creditor, but rather was the purchaser in a foreclosure auction. This factor appears to protect creditors, not purchasers, and so the factor appears not to justify the relief sought.

Weighing the factors as a whole, the reality that stands out most starkly and that controls is that the Purchaser acted, and incurred costs and took steps in furtherance of the sale, only well after being told of the bankruptcy filing and the resulting invalidity of the sale. No other factor supports setting aside the unacceptability of this course of action or the legal consequences of it. Rather, even though the Court sympathizes with the Purchaser's principal's evident distress and possible lack of sophistication, the Court "must hold those who defile the automatic stay to the predictable consequences of their actions and can grant retroactive relief only sparingly and in compelling circumstances." *Crichlow*, 666 B.R. at 449 (internal citation omitted).

Accordingly, Movant's request for retroactive stay relief is denied.

B. Sticking the Case

Movant also argues, in the alternative, that Debtor's bankruptcy case should be stricken due to Debtor's failure to undergo credit counseling prior to the filing. Movant cites a 2006 case in which this Court held that the filing of a bankruptcy petition by a debtor who has not completed the statutorily required credit counseling did not commence a bankruptcy case. Thus, the court concluded that in such a case, the automatic stay was never triggered. *See In re Elmendorf*, 345 B.R. 486, 497 (Bankr. S.D.N.Y. 2006), *aff'd sub nom. Adams v. Finlay*, No. 06 6040, 2006 WL 3240522 (S.D.N.Y. Nov. 3, 2006), *vacated and remanded sub nom. In re Zarnel*, 619 F.3d 156 (2d Cir. 2010) (choosing to strike rather than dismiss three cases where debtors did not complete credit counseling prior to filing petitions). The Second Circuit on appeal, however, disagreed, explaining that a case is in fact commenced and the automatic stay is triggered even when a debtor did not complete the required credit counseling prior to his filing. *In re Zarnel*, 619 F.3d 156, 171 (2d Cir. 2010) ("we note that having the automatic stay commence even when a debtor fails to satisfy the credit-counseling requirements both fits into the overall purpose and

framework of the stay and ensures that eligible debtors receive protection from the bankruptcy system."). The court remanded on the question of whether dismissal or striking the case under a bankruptcy court's equitable powers under section 105(a) was more appropriate, stating, "[w]hile we note that we are unaware of any case similar to this one in which a court has determined that a case has commenced and yet taken an action other than dismissal, the bankruptcy court did not address whether other actions, including striking a petition, might be appropriate in these circumstances. We thus conclude that this is a question for the bankruptcy court to address initially." *Id.*

Upon remand, this Court dismissed all three cases addressed in *Elmendorf*. *See Case No.* 05–55048 ECF. No. 29, *Case No.* 06–35274 ECF. No. 34, *Case No.*06–35189 ECF. No. 47. Notably, Movant did not cite any case post *Zarnel* where a bankruptcy court chose to strike a case for a debtor's failure to complete credit counseling prior to filing her petition. Moreover, this Court routinely treats failure to complete credit counseling as a basis for dismissal, at least unless it is viewed as a curable or excusable deficiency (a possible outcome whose permissibility this decision does not assess). Moreover, the analysis of *Zarnel* – binding precedent on this Court – counsels that cases once filed trigger the stay, and continue to exist unless and until they are dismissed or successfully pursued and eventually closed. The result sought by Movant would undermine the force, effectiveness, and reliability of the automatic stay by inviting retroactive challenges to undo the stay by striking petitions. Such a practice would seriously harm the effectiveness and efficiency of the bankruptcy process, and is not justified in the present circumstances. Thus, Movant's request to strike the bankruptcy petition is denied.

## **CONCLUSION**

For the aforementioned reasons, Movant's motion is denied. This decision and order is self-effectuating, such that no separate order is required. To the extent this constitutes an appealable order, the time to appeal commences upon entry of this decision and order.

SO ORDERED.

Dated: New York, New York
August 31, 2026

*s/ David S. Jones*
Honorable David S. Jones
United States Bankruptcy Judge